IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CHRISTFER LUCKO #903149 | § | |
| v. | § | CIVIL ACTION NO. 6:07cv454 |
| JOHN NOLEN, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Christfer Lucko, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. 636(c). As Defendants, Lucko named physician's assistant John Nolen, metal fabrication plant manager David Boyd, and Lt. David Hatt.

An evidentiary hearing was conducted on April 17, 2008, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, Lucko testified that he was involved in an accident at the metal plant on July 5, 2006. This accident occurred because Boyd allowed another inmate to operate a forklift indoors, and the forklift ran over Lucko's foot. Lucko states that the forklift was not designed to be operated indoors, and that other lifts, which could be used indoors, were available.

After the accident, Lucko said that he was taken to the infirmary and his foot was examined by Nolen. X-rays were done and a brace was put on his foot. Lucko says that he broke two bones in his foot and his leg was also injured. The next day, he was brought back to the infirmary and a hard cast was put on. However, Lucko says, his leg and foot were still swollen, and when the swelling went down, the cast became loose and pinned his foot in a painful position inside of the cast.

Lucko returned to Nolen, who saw how loose the cast was and removed it. He gave Lucko the same brace which Lucko had worn on the day of his injury, and Lucko used this brace for about five to six months. During this time, he says, he filed sick call requests and went to the infirmary to try to find out why his foot was not healing, but Nolen would not give him an answer.

In October of 2006, Lucko says, he saw Dr. Tito Orig. Dr. Orig said that there may be more wrong than just two broken bones, and scheduled him for a trip to the University of Texas Medical Branch Hospital in Galveston. When he finally did get to Galveston, the doctors there gave him a walking cast and told him that he should have had one sooner.

While he was waiting for the appointment in Galveston, Lucko said, he received a disciplinary case written by Lt. Hatt for refusing a housing assignment. Lucko explained that he refused the assignment to ensure that he stayed in the bottom row and in a bottom bunk. He stated that Nolen had refused to place bottom row, bottom bunk restrictions on his medical classification form (known as an HS-18 form).

When he was called out to go to the disciplinary hearing, Lucko said, the escorting officer refused to provide him with a wheelchair, and so he did not attend the hearing. Lucko stated that he was found guilty and punished with 30 days of cell and commissary restrictions and the loss of good time; however, he indicated that the case was later overturned, and so he did not lose any good time.

On October 12, 2006, Lucko said that Nolen again refused to place bottom row or bottom bunk restrictions on his classification form. He says that he received a new housing assignment and fell twice on the stairs. Lucko also said that he was assigned to work in the field, although he actually reported for work on only two days.

Lucko stated that he was suing Nolen for giving him the wrong kind of cast and for "improper medical care." He stated that he believed that Nolen had been negligent.

Similarly, Lucko stated that Boyd allowed another inmate to operate the forklift indoors, which should not have been allowed but which happened "almost every day." He said that he has

seen two other accidents happen with that forklift, but it was not clear if these other accidents happened before or after the injury which Lucko suffered.

Finally, Lucko complained that Lt. Hatt gave him a disciplinary case even though he, Lucko, had to refuse the new housing assignment. He testified that the assignment would place him in danger and cause him to be a security risk, explaining that he could have fallen down the stairs onto a guard, which would have caused him to receive free-world criminal charges. This did not happen, but Lucko said that it could have. He acknowledged that the disciplinary case which he received from Hatt had been overturned and so he did not lose any good time.

Warden Pratt, a prison official present at the Spears hearing, testified under oath concerning the contents of Lucko's prison records. Warden Pratt said that in making housing assignments, the officials look at the inmate's HS-18 medical classification form. He said that Lucko was not restricted to a bottom bunk and bottom row at the time that he received the disciplinary case, but that his classification form was changed a few days later to reflect "no climbing."

Warden Pratt stated that there were no indications in the record that Lucko had been assigned a job in the field. He stated that the HS-18 form dated March 20, 2007, said that Lucko was medically unassigned, but also bore the notation "field squad temp." He explained that this meant that Lucko would be reviewed to see if he was eligible for assignment to the field. The Court will take Lucko's testimony as true and presume that Lucko was in fact sent out to work in the fields on one or two days, as he testified, Lucko's classification records also show that on April 26, 2007, his job assignment was listed as "CO hoe squad 2."

Nurse Kathy Gray, a prison nurse also present at the hearing, testified under oath concerning the contents of Lucko's medical records. She stated that these records show that Lucko was seen for his injury on the day it occurred and that he was given a bottom row and bottom bunk restriction, but it was not clear how long these restrictions lasted. She said that Lucko was seen on many occasions after that for the injury, and that he received a cell pass as well as a pass for crutches. Nurse Gray

added that Lucko was sent to Galveston for treatment, and records show that he was transported several times to the Beto Unit for physical therapy and for the Brace and Limb Clinic.

The Court has also independently reviewed Lucko's medical records. He was seen by Nolen after the accident happened, and then again by physician's assistant Maria Berger later that day. Lucko said that he was in "intense pain" in his foot, and Berger rewrapped it and reapplied the splint. She gave him a cell pass and crutch pass, and Tylenol no. 3, a narcotic pain medication.

On July 24, Lucko was seen by Nolen, who noted that the cast was loose and reapplied it. On August 9, he saw Dr. Orig, who said that the X-rays showed a non-displaced fracture in the third and fourth metatarsals (i.e. the bones which connect the toes to the middle bone of the foot). There was no acute fracture or subluxation of Lucko's ankle. Additional X-rays were ordered, and Lucko was scheduled to go to Galveston, which he did in November of 2006.

### Legal Standards and Analysis

Lucko stated at the Spears hearing that Nolen had been negligent with regard to the treatment of his foot. The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally

be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

A review of the medical records in this case confirms Lucko's testimony that the treatment given him by Nolen may have been negligent, but that there is no indication that Nolen was deliberately indifferent to his serious medical needs or that Nolen refused to treat him, ignored his complaints, on engaged in any similar conduct showing a wanton disregard for Lucko's medical needs. While Nolen may have made some mistakes in his treatment, including failing to give Lucko a walking cast sooner and failing to adjust his restrictions until October of 2006, these errors do not

rise to the "extremely high standard" of deliberate indifference to a serious medical need. Lucko's claim against Nolen is without merit.

Second, Lucko sues David Boyd, the manager of the metal plant where the injury occurred. He says that Boyd allowed the other inmate to drive a forklift in the building, with the result that Lucko's foot was run over.

As in the realm of medical claims, negligence with regard to an inmate's safety is not sufficient to set out a constitutional claim. The Fifth Circuit has held that prison officials have a duty not to be deliberately indifferent to the safety of their inmates. Johnston v. Lucas, 786 F.2d 1254, 1260 (5th Cir. 1986); Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986). However, a showing of mere negligent indifference is not enough for a constitutional claim. Davidson v. Cannon, 474 U.S. 344 (1986).

In Davidson, the Supreme Court faced the issue of what constitutes deliberate indifference to an inmate's safety. There, an inmate named Davidson was threatened by another inmate, McMillian. Davidson sent a note to the Assistant Superintendent of the prison, Cannon. Cannon passed the note to a guard named James. James, however, left the note on his desk and later forgot about it. McMillian later assaulted Davidson, causing serious injuries.

The Supreme Court acknowledged that the Defendants' lack of due care resulted in serious injury, but held that the lack of due care alone did not approach the sort of abusive governmental conduct that the Due Process Clause was designed to prevent. The Court emphasized that negligence alone was insufficient to trigger the protections of the Fourteenth Amendment. Davidson, 474 U.S. at 347-48.

The Supreme Court has specifically addressed the issue of deliberate indifference to an inmate's safety in prison. The Court explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...

> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); *see* Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

In this case, Boyd's action in allowing another inmate to drive a forklift inside the building, when that forklift was not designed to be used inside, may have been negligence, but Lucko has not shown that this act amounted to deliberate indifference to his safety. There is no indication that Boyd knew that allowing this forklift to be operated indoors posed a substantial risk of serious harm to Lucko, or that he disregarded this risk. Even if Boyd should have known that operating the forklift indoors posed a substantial risk that someone would get hurt, a premise which itself has not been shown, this is not sufficient to show that Boyd was deliberately indifferent to Lucko's safety.

The fact that Lucko suffered a serious injury, while obviously a matter of significant importance to him, is not by itself sufficient to show that Boyd was deliberately indifferent. The Fifth Circuit has specifically held that complaints by prisoners for negligence on the part of prison officials, even where serious injury occurs, do not set out a valid claim under the Civil Rights Act even if such complaints could be valid under state law. *See* Bowie v. Procunier, 808 F.2d 1142 (5th Cir. 1987). Lucko's claim against Boyd is without merit.

Finally, Lucko sues Lt. Hatt, who gave him a disciplinary case for refusing a housing assignment. Lucko explains that he refused the assignment because he did not want to go to a higher row, in that he was on crutches. The prison records showed that at the time of the case, Lucko did not have a restriction against climbing, but received one a few days later, and the disciplinary case was dismissed.

Lucko has not shown that the fact that he received a disciplinary case which was later dismissed deprived him of a constitutionally protected liberty interest. The Supreme Court has held that the States may, under certain circumstances, create liberty interests which are protected by the Due Process Clause, but these interests will be generally limited to freedom from restraint which,

7

while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 115 S.Ct. 2293, 2301 (1995). The Court went on to explain that the operative interest involved in determining whether a liberty interest exists was the nature of the deprivation. In applying this case, the Fifth Circuit has held that deprivations such as cell and commissary restrictions do not infringe constitutionally protected liberty interests, although the loss of good time credits can do so when an inmate is eligible for release on mandatory supervision. See Malchi v. Thaler, 211 F.3d 953, 959 (5th Cir. 2000). Prison records show that Lucko is not eligible for release on mandatory supervision.

In this case, Lucko did not suffer the loss of any constitutionally protected liberty interests because his disciplinary case was overturned and his lost good time credits were restored. This fact is confirmed by TDCJ records, which show that Lucko has not lost any good time as a result of disciplinary action. As a result, Lucko has not shown Lt. Hatt deprived him of any constitutionally protected liberty interest, and so his claim against Lt. Hatt is without merit.

Lucko complains about a job assignment which he received, which caused him to work out in the fields for one or two days before being medically unassigned. He also complained that he fell on the stairs once or twice. It is not clear who, if anyone, he is suing in connection with these complaints. Furthermore, Lucko's medical records do not reflect that he ever filed a sick call request complaining of being injured from a fall on the stairs, or that he raised any complaints concerning the one or two days which he worked in the field.

In order to successfully plead a cause of action in civil rights cases, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. Jacquez v. Procunier, 801 F.2d 789, 793 (5th Cir. 1986). Lucko has not set out a set of facts showing that any of the defendants were responsible for his job assignment or the falls on the stairs.

Furthermore, the Fifth Circuit has stated that requiring an inmate to work beyond his physical capacity may raise a valid civil rights issue, but the Plaintiff must show that the work has been

assigned with knowledge of the condition and that it will be worsened thereby, or continued with the same knowledge. As a result, the Fifth Circuit said, only if the officials know that the work assigned will significantly aggravate a serious medical condition will there be an Eighth Amendment violation. Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). In other words, if prison officials assign an inmate to a work detail and they know that such an assignment could exacerbate a serious physical ailment, then such a decision could constitute deliberate indifference. Mendoza v. Lynaugh, 989 F.2d 191, 194 (5th Cir. 1993).

In this case, Lucko has not shown that the prison officials who assigned him to the work detail knew of his condition and that his condition would be worsened thereby. Nor has he shown that he actually suffered any harm as a result of the one or two days that he worked in the field, or from the fall which he took on the stairs. The Supreme Court has stated that for a Section 1983 claim to be viable, the plaintiff must allege an injury. Memphis Community School District v. Stachura, 477 U.S. 299, 308 (1986). Lucko's claims regarding these incidents, to the extent that he asserts that any of the named defendants are even responsible for them, are without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989),

*citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Lucko's claims lack any arguable basis in law and fail to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous. 28 U.S.C. §1915A(b). It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **13** day of **May, 2008.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE